IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANDREW BLIZZARD, *et al.*,
 *Plaintiffs*,

v.

HUNTER WARFIELD, INC., *et al.*,
 *Defendants*

Civil Action No.
23-3374-ABA

**MEMORANDUM OPINION**

 Plaintiffs Andrew Blizzard and Nora Rowland have sued Defendants Thornhill Properties and Mt. Vernon Mill, LLC (together the "Landlord Defendants")[1] for violations of the Maryland Declaratory Judgment Act, Md. Code, Cts. & Jud. Proc. § 3-409, the Maryland Consumer Debt Collection Act ("MCDCA"), MD. Code, Comm. § 14-202(8) & (11), and the Maryland Consumer Protection Act ("MCPA"), Md. Code, Comm. §13-101, *et seq.*, alleging that the Landlord Defendants improperly collected rent during a period when they lacked the requisite license to do so. The Landlord Defendants have moved for summary judgment. Because Plaintiffs have failed to show an actionable injury, the Court will grant the motion and enter judgment in favor of the Landlord Defendants.

**BACKGROUND**

 Baltimore City Code, Article 13 § 5-4 requires a license to rent a dwelling or charge and collect rent payments. Plaintiffs entered into a lease with the Landlord

---

[1] There is a third Defendant, Hunter Warfield, Inc., but that Defendant did not file a motion for summary judgment and the parties have informed the Court that Plaintiffs and Hunter Warfield have settled the claims against it. *See, e.g.*, ECF No. 59.

Defendants for an apartment in May 2019. ECF No. 45-4. There were periods during the lease term when the Landlord Defendants lacked the required Baltimore City license for the rental property. ECF No. 45-14 at 12–13.[2] Plaintiffs did not know at the time that the Landlord Defendants lacked a license. ECF No. 46-5 ¶ 2. The Landlord Defendants contend that they also were unaware that they lacked a rental license, having previously performed the required steps to obtain a license. ECF No. 45-10 at 14:9–15:4, 17:13–16. The Landlord Defendants contend that the Baltimore City Department of Housing and Community Development failed to issue the license due to an administrative error. ECF No. 45-14 at 7–8.

At various times during their lease, Plaintiffs were late in paying their rent. ECF No. 45-5 at 118:7–10. During these times, the Landlord Defendants would call or email Plaintiffs asking for rent payments. ECF No. 46-5 ¶ 6; ECF No. 46-7. Ultimately, the third Defendant not at issue in this motion, Hunter Warfield, Inc., filed a summary ejectment action against Plaintiffs in July 2023 on the Landlord Defendants' behalf. ECF No. 45-5 at 125:9–16; ECF No. 45-8. The action was voluntarily dismissed, and Plaintiffs were not evicted and no judgment was entered against them. ECF No. 45-5 at 125:13–126:9. Plaintiffs ultimately moved out of the apartment at the end of their lease in May 2024. ECF No. 45-4.

After Plaintiffs discovered that the Landlord Defendants had lacked the required rental license while Plaintiffs were paying them rent, they filed this suit on December 12, 2023. ECF No. 1. Article 13 § 5-4 of the Baltimore City Code does not create a private right of action for tenants who paid rent during periods when the landlord was

---

[2] Page citations to records other than transcripts are to the ECF page numbers, which may differ from the pagination used by the parties.

unlicensed. *Assanah-Carroll v. Law Offices of Edward J. Maher, P.C.*, 480 Md. 394, 422 (2022); *Aleti v. Metro. Baltimore, LLC*, 479 Md. 696, 735 (2022). But Plaintiffs allege that this conduct is actionable under other state and federal statutes. Thus, Plaintiffs have brought claims against the Landlord Defendants pursuant to the Maryland Declaratory Judgment Act, the MCDCA, and the MCPA. Plaintiffs do not assert any injury other than that they paid rent to the Landlord Defendants because of the Landlord Defendants' collection efforts for periods when the property lacked a rental license. Plaintiffs also filed a motion for class certification, ECF No. 46, that the Court need not address given the outcome of the motion for summary judgment.

The Landlord Defendants filed a motion for summary judgment, primarily arguing that Plaintiffs lack standing to bring this case because they have not suffered any compensable injury. ECF No. 45. Plaintiffs responded and the Landlord Defendants replied. ECF Nos. 51 & 56. The Court held oral argument on December 19, 2025.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, a party may move for summary judgment on a "claim or defense–or the part of [any] claim or defense"–by showing that "there is no genuine dispute as to any material fact" and that the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if proof of its existence "might affect the outcome of the suit," and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[C]ourts must view the evidence in the light most favorable to the nonmoving party and refrain from weighing the evidence or making credibility determinations." *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 761 (4th Cir. 2021) (quoting *Variety Stores, Inc. v. Wal-Mart Stores,*

*Inc.*, 888 F.3d 651, 659 (4th Cir. 2018)). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If a moving party carries this burden, then the Court will award summary judgment unless the non-moving party can identify specific facts, beyond the allegations or denials in the pleadings, that show a genuine issue for trial. Fed. R. Civ. P. 56(e). The "mere existence of a scintilla of evidence in support of the [opposing party's] position," however, is insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 252.

## DISCUSSION

The outcome of the Landlord Defendants' motion for summary judgment largely hinges on *Assanah-Carroll*, 480 Md. 394, and the cases upon which it relies. The salient issue is whether a compensable injury supporting an MCDCA or MPCA claim arises when a tenant pays rent and does so voluntarily—*i.e.*, not in response to a court judgment—for periods of time when the landlord does not have the requisite license for the rental property. The Court concludes that, under *Assanah-Carroll* and the precedent preceding it, such payment of rent does not support a cause of action under these statutes.

Plaintiffs' MCDCA claim is premised on Md. Code, Com. Law § 14-202(8) and (11). Section 14-202(8) prohibits collectors from "claim[ing], attempt[ing], or threaten[ing] to enforce a right with knowledge that the right does not exist." Md. Code, Com. Law § 14-202(8). Under § 14-202(11), "a collector may not . . . [e]ngage in any conduct that violates §§ 804 through 812 of the federal Fair Debt Collection Practices Act" ("FDCPA"). *Id.* § 14-202(11). These sections of the FDCPA are meant to protect individuals from unfair and deceptive debt collection practices. 15 U.S.C. §§ 1692b–

4

1692j. Similarly, the MCPA prohibits trade practices that are unfair, abusive, or deceptive in, among other things, the "lease . . . of . . . consumer realty" and the "[t]he collection of consumer debts." Md. Code, Com. Law § 13-303(1), (5).

"Rental of a dwelling that has not been licensed as required by a local housing code is an unfair and deceptive practice by a landlord." *Galola v. Snyder*, 328 Md. 182, 185 (1992); *see also Golt v. Phillips*, 308 Md. 1, 9 (1986). But to maintain a private civil action under these statutes, the tenant must establish an "actual loss or injury caused by the deceptive trade practices." *Galola*, 328 Md. at 185; *Assanah-Carroll*, 480 Md. at 415, 420, 440–41. A lack of licensure alone is not sufficient to support such claims. *Assanah-Carroll*, 480 Md. at 420; *Galola*, 328 Md. at 185–86; *CitaraManis v. Hallowell*, 328 Md. 142, 159 (1992).

The Landlord Defendants contend that Plaintiffs' claims fail because Plaintiffs have not shown that they suffered the type of injury that the Maryland Supreme Court has recognized as actionable in a claim based on a landlord's failure to obtain a license. In part they present this lack-of-injury argument as implicating Article III standing. But because an adequate injury is an element of Plaintiffs' causes of action, the Court will address the issue through that lens; it need not and does not decide whether such deficiency also creates an Article III injury-in-fact problem.

The Supreme Court of Maryland has held that a tenant, to show an actionable injury, must, at minimum, have been required to expend additional resources or have been physically injured because of a landlord's actions during a period where they are paying rent and the landlord does not have the requisite license for the rental property— the mere payment of rent to an unlicensed landlord is insufficient. *McDaniel v. Baranowski*, 419 Md. 560, 587–88 (2011) (holding that the tenant seeking damages

5

under the MCPA "failed to present any evidence that she sustained any actual damages, such as bills for medical treatment, loss of wages, or the cost of securing suitable substitute housing, for example," while the rental unit was unlicensed); *Golt*, 308 Md. at 13–14 (concluding that the plaintiff suffered damages under the MCPA while his apartment was both unlicensed and uninhabitable in the form of rent paid while the apartment was unlicensed and the cost of moving and substitute housing). As stated, Mr. Blizzard and Ms. Rowland do not allege the type of injuries discussed in these cases.

In *Assanah-Carroll*, the court was presented with two certified questions. In summarizing the questions, the *Assanah-Carroll* court explained that "Certified question 1 addressed the *tenant's* right to obtain restitution of rent where the payment is voluntarily paid" while "Certified question 2 involve[d] a *landlord's* right to engage in debt collection activities, including pursuing claims against the tenant in court, where the tenant has failed to pay rent attributable to the unlicensed period." 480 Md. at 427. Factually, *Assanah-Carroll* was similar to this case. Assanah-Carroll leased an apartment in Baltimore City. *Id.* at 403. During the lease, the apartment complex's license lapsed. *Id.* Assanah-Carroll, like the Plaintiffs here, sued the landlord for the rent she paid during the period when the complex was unlicensed. *Id.* at 403–04. Also similar to this case, Assanah-Carroll did "not allege that her dwelling unit was uninhabitable or that the value of the lease was diminished by any condition of the property caused by the lack of licensure." *Id.* at 403. Instead, her "claim for damages under the MCDCA and MCPA [was] based solely upon the fact that the property was not licensed." *Id.*

In connection with the first certified question, the *Assanah-Carroll* court concluded that "a tenant who *voluntarily* paid rent to a landlord who lacked a rental

6

license may not bring a private action under the MCPA or the MCDCA to recover restitution of rent based upon the landlord's lack of licensure" because "a tenant may only maintain a private action under the MCPA . . . arising from renting an unlicensed apartment if the tenant can prove that the unlicensed condition caused the tenant to suffer an 'actual injury or loss.'" *Id.* at 401 (emphasis added); *see also Galola*, 328 Md. at 186 ("[V]oluntary payment of rent under an unenforceable lease does not entitle a tenant to restitution of that rent unless the tenant can establish that he or she was provided less than she had bargained for in the lease.") (citing *CitaraManis*, 328 Md. at 158-59). In other words, the Supreme Court of Maryland held that, as a matter of law, a tenant who "voluntarily" paid rent, and who suffered no other injuries, has not suffered an "actual injury or loss" sufficient to assert a claim under the MCPA or MCDCA.

In relation to the second certified question, the *Assanah-Carroll* court concluded that when "a landlord fails to possess a valid license for a period of a tenant's occupancy, a landlord may not utilize the courts . . . to recover unpaid rent that is attributable to an unlicensed period." 480 Md. at 440. The court continued that "during a period when the landlord was unlicensed, a tenant may have a right of action under the MCDCA and the MCPA where the landlord engages" "in collection activities or pursue[s] claims against a tenant who has failed to pay rent," if "the tenant can establish that the unlawful conduct caused damages." *Id.* at 440–41. Similarly, the court held that a "landlord does not have a right to file a summary ejectment proceeding to collect unpaid rent that was attributable to an unlicensed period" and "if the landlord undertakes such action, the landlord could violate the MCDCA." *Id.* at 441. The court also held that under these circumstances—*i.e.*, where a tenant has been evicted through summary ejectment

7

proceedings filed on behalf of an unlicensed landlord—rent paid in response to court orders arising from such proceedings "may constitute damages." *Id.*

Thus, under *Assanah-Carroll*, a landlord may not use summary ejectment proceedings while unlicensed. *Id.* at 440–41. But a tenant may only maintain private causes of action for damages under the MCDCA and MCPA against a landlord who collected rent during a period when the landlord was unlicensed if the tenant can *also* "establish that the unlawful conduct caused damages." *Id.* And a tenant who "voluntarily paid rent" during an unlicensed period does not have a cause of action because voluntarily paid rent is not an "actual injury or loss." *Id.* at 401; *see Galola*, 328 Md. at 185–86; *CitaraManis*, 328 Md. at 158–59.

So what actions by a landlord make rent payments involuntary? *Assanah-Carroll* dealt primarily with the filing of rent collection actions (although the landlord did attempt other collection activities), holding that "a landlord may not utilize the courts . . . to recover unpaid rent that is attributable to an unlicensed period." 480 Md. at 440. But several times in the opinion, the court uses broader language regarding what a landlord is prohibited from doing. *Id.* at 442–43 ("[A] landlord may not engage in debt collection activities *or* pursue claims against a tenant who has failed to pay rent attributable to a period during which the landlord was unlicensed.") (emphasis added); *id.* at 427 (framing the second certified question as involving "a landlord's right to engage in debt collection activities, *including* pursuing claims against the tenant in court") (emphasis added).

Plaintiffs argue that payments made pursuant to any collection attempt by a landlord, from simply stating an outstanding balance on a website, to calling or emailing for late rent payments, to filing a court action, constitute actionable damages under

8

*Assanah-Carroll* for periods where the property is unlicensed. Defendants argue that only payments made pursuant to a court-ordered judgment or eviction are actionable because only then would the payments be involuntary.

The Court concludes that to be an involuntary rent payment recoverable under the MCDCA or MCPA, the payment must be made pursuant to a court-ordered judgment or eviction order. That is, when *Assanah-Carroll* refers to "unlawful collection activity" that renders a tenant's payment of rent not "voluntary," it was referring to a landlord who "utilize[s] the courts" to obtain a summary ejectment order or a judgment for payment of rent. Any payments made as a result of lesser collection attempts are "voluntary" as the Supreme Court of Maryland used that term. A landlord is prohibited from engaging in these lesser collection activities for periods where the property was unlicensed, but these activities do not give rise to a private right of action under the MCDCA or the MCPA. Courts in this district have agreed with this reasoning, holding that even filing rent-collection actions that are voluntarily dismissed do not create actionable injuries. *See Zambali v. Shulman Rogers, P.A.*, Case No. 23-cv-03194-SAG, 2024 WL 3161590, at *4 (D. Md. June 25, 2024) (concluding that the plaintiff could not maintain a claim based on a lack of licensure "because he ha[d] not alleged that he suffered any damages in response to the actions [the landlord] took" including filing two failure-to-pay-rent lawsuits that the landlord ultimately "voluntarily dismissed . . . when Zambali went to court," and noting that although the landlord "should not have filed the cases" because of the lack of licensure, "the Complaint fails to identify a single injury resulting from the lawsuits"); *Exum v. Kane*, Case No. 24-cv-1425-DKC, 2025 WL 834014, at *6 (D. Md. Mar. 17, 2025) (concluding that "Plaintiff's claim that the filing of the [failure-to-pay-rent] suits itself constitutes a concrete injury fails" where, among

9

other things, one of the suits was voluntarily dismissed), *opinion clarified*, 2025 WL 2049985 (D. Md. July 22, 2025).

This interpretation is also supported by the long-standing requirement under Maryland law that tenants must pay rent when they receive what they bargained for, even if the property is unlicensed. *See Aleti*, 479 Md. at 742 ("[T]he intent of the rental license law is to force compliance with the obligation to become licensed, not to provide tenants with rent-free housing in unlicensed dwellings."); *CitaraManis*, 328 Md. at 159 ("In this case, even if the lease were unenforceable by the landlords" because of a lack of licensure, "the tenants have received everything that they bargained for, and a necessary element justifying the remedy of restitution, i.e., unjust enrichment, is lacking"); *Zambali*, 2024 WL 3161590 at *4 ("[T]he now-Maryland Supreme Court did not hold that tenants are entitled to live rent free when a rental property's license expires. Put another way, denying unlicensed landlords access to the courts to collect unpaid rent does not eliminate a tenant's rental obligations."); *see also CitaraManis*, 328 Md. at 153 ("[A]warding full restitution of the rent paid by the tenants who offered no proof of actual injury or loss would be in the nature of a punitive remedy, merely serving to penalize the [landlords] for their failure to obtain a license for the property.").

Plaintiffs here assert that taking any action to collect rent while unlicensed, including passively listing outstanding rental balances on a website, gives rise to an MCDCA or MCPA claim. Accepting such a position would eviscerate the long-standing line of precedent described above because Plaintiffs' position would make practically any rent payment during an unlicensed period actionable. The only way to harmonize *Assanah-Carroll*'s statement regarding the first certified question that voluntary rent payments for periods where the landlord lacks a license are not actionable injuries, 480

10

Md. at 401, and its statement regarding the second certified question that "rent paid in response to the landlord's collection activities" can otherwise constitute actionable damages, *id.* at 441, is to focus on whether such a rent payment is voluntary. To accept Plaintiffs' position that almost no rent payments are "voluntary" would be to ignore *Assanah-Carroll*'s holding (as well as those in *Galola* and *CitaraManis*) that "a tenant who voluntarily paid rent to a landlord who lacked a rental license may not bring a private action" because "a tenant may only maintain a private action" under these circumstances "if the tenant can prove that the unlicensed condition caused the tenant to suffer an 'actual injury or loss.'" *Id.* at 401; *see Galola*, 328 Md. at 185–86; *CitaraManis*, 328 Md. at 158–59. Likewise, to accept Plaintiffs' position would require finding that *Assanah-Carroll* intended to silently overrule decades of prior precedent. In short, rental payments are voluntarily made unless a court compels payment or orders eviction absent payment.

Plaintiffs also argue that their position is supported by the discussion in *Assanah-Carroll* of the Restatement (Second) of Contracts § 181. That section provides that "[i]f a party is prohibited from doing an act because of his failure to comply with a licensing . . . requirement" then "a promise in consideration of his doing that act . . . is unenforceable on grounds of public policy" where "the requirement has a regulatory purpose," and "the interest in the enforcement of the promise is clearly outweighed by the public policy behind the requirement." As part of its analysis, the court in *Assanah-Carroll* discussed section 181 and concluded that those two conditions are met when a landlord "attempts to collect unpaid rent attributable to the unlicensed period." 480 Md. at 439. The court then held, "based upon [its] authority to apply the common law principles expressed in the Restatement § 181," that

11

> [w]here a municipality or county enacts a rental license law which conditions the performance of a residential lease upon the issuance of a rental license, and a landlord fails to possess a valid license for a period of a tenant's occupancy, a landlord may not utilize the courts, whether through a common law breach of contract action, or a statutory right of action filed under Title 8 of the Real Property Article to recover unpaid rent that is attributable to an unlicensed period.

*Id.* at 440. As is clear from the quote, the court was specifically discussing section 181 in the context of a landlord's use of litigation to collect rent. *See id.* at 437 ("[W]e concluded [in *McDaniel*, 419 Md. 560], based upon the common law principles expressed in the Restatement § 181, that we would not permit an unlicensed landlord to enforce the landlord's contractual right to receive rent within the summary ejectment process.").

But Plaintiffs argue that "because the rental debt is unenforceable under RESTATEMENT § 181, any 'collection activity' covered by the MCDCA would potentially violate [sections 14-202(8) and (11) of the MCDCA], and payments made in response to the collection activity would be damages under" section 14-203 of the MCDCA.[3] ECF No. 51 at 15. As discussed above, however, Plaintiffs' position is foreclosed by *Assanah-Carroll* and the cases preceding it. *See Assanah-Carroll*, 480 Md. at 401, 415, 420, 440–41; *Galola*, 328 Md. at 185; *CitaraManis*, 328 Md. at 158–59. It is true that, under *Assanah-Carroll* and the cases preceding it, a lease is unenforceable in court during periods of time where the landlord is unlicensed, but it is equally true that to maintain a

---

[3] Section 14-203 of the MCDCA states that "[a] collector who violates any provision of this subtitle is liable for any damages proximately caused by the violation, including damages for emotional distress or mental anguish suffered with or without accompanying physical injury." Md. Code, Com. Law § 14-203.

private cause of action under the MCDCA or MPCA, a tenant who paid rent while the property was unlicensed must show an actionable injury, which does include (per *Assanah-Carroll*) legally compelled rent payments. Plaintiffs have not shown such an injury and therefore cannot maintain their MCDCA or MCPA claims.

Because Plaintiffs cannot maintain their other claims against the Landlord Defendants for the conduct alleged, there are no grounds to enter a declaratory judgment under Md. Code, Cts. & Jud. Proc. § 3-409.

## CONCLUSION

Because Plaintiffs have failed to show an actionable injury under these facts, they cannot maintain their MCDCA and MCPA claims against the Landlord Defendants. The Court will grant the Landlord Defendants' motion and enter judgment in their favor.

A separate order will issue.


Date:  February 3, 2026                               /s/
                                                Adam B. Abelson
                                                United States District Judge